VILLAGE OF BUTLER and another, Appellants, vs. INDUSTRIAL COMMISSION and another, Respondents.

*November 6—December 1, 1953.*

For the appellants there were briefs by *Kivett & Kasdorf,* attorneys, and *A. W. Kivett* and *Nonald J. Lewis* of counsel, all of Milwaukee, and oral argument by *Mr. A. W. Kivett* and *Mr. Lewis.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondent Emma Bauer there was a brief by *William J. Calvano,* attorney, and *A. L. Skolnik* of counsel, both of Milwaukee, and oral argument by *Mr. Skolnik.*

CURRIE, J.   We have here presented a situation where the employee went to the scene of an accident some half-mile distant from the village limits, contrary to the instructions given him at the time of his hiring which confined his official duties to the limits of the village, except in cases of "hot pursuit." It is the contention of appellants that such deviation took him without the scope of his employment so as to remove him and his dependents from the protection of the Workmen's Compensation Act at the time and place of injury.

It should be pointed out that our statute does not require that the injury be "within the scope of employment" in order to be compensable, but only that at the time thereof the employee be performing service *growing out of and incidental to his employment.* Sec. 102.03 (1) (c), Stats. The prin-

ciples of the common-law doctrine of *"respondeat superior"* of the law of master and servant are inapplicable to workmen's compensation cases. Whether an employee is acting within the scope or course of his employment is usually determinative of the issue of whether his employer should be held liable in damages for his employee's wrongful act, but is not necessarily controlling in determining whether an employer should be held liable under the Workmen's Compensation Act if the employee is injured. This distinction was recognized by the Louisiana supreme court in the recent case of *Edwards v. Louisiana Forestry Comm.* (1952), 221 La. 818, 60 So. (2d) 449, 451. In referring to recent decisions such as that of *O'Leary v. Brown-Pacific-Maxon, Inc.* (1951), 340 U. S. 504, 71 Sup. Ct. 470, 95 L. Ed. 483, extending workmen's compensation coverage to unusual fact situations, the Louisiana court stated (p. 826) :

"These pronouncements reflect the modern judicial concept of compensation legislation, which is based on the premise that the phrase 'arising out of the employment' does not have the same connotation as the common-law 'scope of employment,' the interpretation earlier attributed to it, but means, instead, the employment viewed from any aspect—its nature, conditions, obligations, and incidents. They lend emphasis to the growing recognition of the fact that judicial interpretation of these acts creating liability irrespective of fault in the light of common-law liability predicated on fault hedges this humanitarian legislation about with the very restrictions it sought to circumvent and abolish, and nullifies the underlying insurance principle inherent in this industrial compensation."

Likewise the United States supreme court in *O'Leary v. Brown-Pacific-Maxon, Inc., supra,* stated (p. 506) :

"Workmen's compensation is not confined by common-law conceptions of scope of employment. *Cardillo v. Liberty Mutual Ins. Co.* 330 U. S. 469, 481; *Matter of Waters v. Taylor Co.* 218 N. Y. 248, 251, 112 N. E. 727, 728. The

test of recovery is not a causal relation between the nature of employment of the injured person and the accident. *Thom v. Sinclair,* [1917] A. C. 127, 142. Nor is it necessary that the employee be engaged at the time of the injury in activity of benefit to his employer. All that is required is that the 'obligations or conditions' of employment create the 'zone of special danger' out of which the injury arose."

Both the cases of *Edwards v. Louisiana Forestry Comm., supra,* and *O'Leary v. Brown-Pacific-Maxon, Inc., supra,* involved emergencies wherein the employee was confronted with a situation where a stranger was in peril and the employee attempted to rescue him, resulting in his injury in one case and his death in the other. Workmen's compensation was awarded in both cases on the theory that the employee did the natural and humane thing when confronted with such emergency, and that his employment placed him in the position where he was so confronted with such emergency.

We believe that the instant case is governed by these same general principles. Bauer was requested to go to the scene of the accident solely because he was a police officer, and the party making the request thought the situation was an emergency which required the presence of a police officer to take over. Although Bauer, upon arriving at the scene of the accident, realized that it was out of his jurisdiction and was a matter for the Milwaukee county sheriff's office to handle, he must have deemed that an emergency existed which required the setting out of flares before officers of the sheriff's office would arrive. He was in the act of setting out such a flare when he sustained the fatal injury resulting in his death.

We deem the following statement contained in 1 Larson, Law of Workmen's Compensation, p. 431, sec. 28.13, to be particularly pertinent:

"It is a well-established principle, even at common law, that the actor's judgment about the existence of an emer-

gency and how to meet it should not be too severely judged in retrospect. He may get the benefit of the emergency doctrine even if the only emergency was in his imagination, if he acted in good faith."

This court, in the case of *Frint Motor Car Co. v. Industrial Comm.* (1919), 168 Wis. 436, 170 N. W. 285, early held that the disobeyance of the orders of the employer does not necessarily preclude recovery for workmen's compensation on the part of the employee. In that case the employee was on duty for his employer in a "pit" alongside the race track at the State Fair park near Milwaukee during certain automobile races and was instructed to remain in the pit. During the races the employee left the pit and was standing at the near-by fence watching the races when a car of his employer skidded and came to a stop near the fence a short distance from where he was standing. As soon as such car stopped the employee jumped from the fence and ran toward it, but before he reached it he was struck by an oncoming car and killed. In its decision this court stated (p. 439) :

"We are satisfied that deceased was at the time of the injury acting within the scope of his employment, and the mere fact that he disobeyed orders does not defeat recovery. [Citing authorities.]"

We recently denied recovery of workmen's compensation benefits to the widow of a deceased employee in the case of *Kosteczko v. Industrial Comm.* (1953), ante, p. 29, 60 N. W. (2d) 355, involving a disobedience by the employee of the instructions given by the employer. In such case the employee was the operator of a "ride" at the State Fair park and was instructed not to leave such ride unless relieved by a fellow employee. Contrary to such instructions the employee did leave his ride during a slack period when no customers were about in order to patronize a neighboring ride, and while a passenger on such ride sustained a fatal injury

causing his death. However, the *Kosteczko Case* is readily distinguishable from the *Frint Motor Car Co. Case* in that at the time the fatal injury occurred to the employee in the first-mentioned case he was on a "frolic of his own," while in the latter case the employee was attempting to perform an act he considered to be for the benefit of his employer.

In order that Bauer's act in disregarding his instructions to confine the performance of his duties within the village limits would constitute such a deviation from his employment as to preclude his widow from recovering workmen's compensation benefits, it would have to be found that at the time of his fatal injury he was engaged in a "frolic of his own" rather than in performing duties of a police officer. The evidence in this case does not warrant such a finding.

It is our conclusion that the finding of the examiner of the Industrial Commission, later confirmed by the commission, that Bauer at the time of his injury "was performing service growing out of and incidental to his employment by the respondent [village] and arising out of his employment" is amply supported by the evidence in the case. In fact, we doubt that a contrary finding could be sustained. Whether such finding constitutes a finding of fact or a conclusion of law we find it unnecessary to determine on this appeal.

*By the Court.*—Judgment affirmed.