CITY OF MILWAUKEE, Appellant, v. INDUSTRIAL COMMISSION and another, Respondents.

*September 30—October 29, 1963.*

130

For the appellant there was a brief by *John J. Fleming,* city attorney, and *Cornelius J. Merten,* assistant city attorney, and oral argument by *Mr. Merten.*

For the respondent Industrial Commission the cause was argued by *Beatrice Lampert,* assistant attorney general, with whom on the brief was *George Thompson,* attorney general.

For the respondent Jamerson there was a brief by *Raskin & Zubrensky,* attorneys, and *Max Raskin* and *Herbert S. Bratt* of counsel, all of Milwaukee.

DIETERICH, J. The city of Milwaukee petitioned the Industrial Commission, pursuant to the provisions of sec. 102.18 (2), Stats. 1957, for review of the findings and order of the examiner. The Industrial Commission affirmed the findings and order of the examiner on June 5, 1962. The city then commenced an action in the circuit court for Dane county, to review the order of the commission. Trial was had to the court and judgment was entered on January 31, 1963, affirming the order of the Industrial Commission.

The following facts reveal this to be a typical mine-run workmen's compensation case. The defendant-respondent, Edward L. J. Jamerson, was employed by the city of Milwaukee as a truck driver in the bureau of municipal equipment. He alleged in his application to the Industrial Commission that he sustained a back injury when he fell while getting out of his truck sometime in the latter part of July, 1958, and that he gave oral notice to his employer on the date of the accident. The city, in its answer, denied that Jamerson sustained a back injury on or about the date set forth in the application, or at any other time while within the scope of employment. The city denied that the relationship of employer and employee existed at the time of the alleged injury, and denied that notice was given as specified in the application. The city also claimed that no notice was given within two years of the date of the alleged injury, and that Jamerson's claim was barred by the limitations contained in sec. 102.12, Stats.

At the hearing before the examiner, Jamerson testified that he injured his back sometime in the later part of the last week in July of 1958. At one point he stated that he twisted his leg on July 31, 1958, and discovered that he could not brake his truck with his right foot, although he later testified that the injury must have occurred on or about July 30, 1958. He further testified that when he finished work for the day, he informed the city dispatcher, Frank Grund, that he had turned his leg and could not put any weight on it and that he wanted to see a doctor. Grund suggested that Jamerson see his own physician, Dr. Charles T. Atkinson, which he did on July 31, 1958. Jamerson phoned Grund on the morning of July 31st to say that he would not be reporting for work. He received word to report to city hall that day, and was told by Dr. Sherkow, the city's physician, to remain at home for a few days and to return to Dr. Atkinson for treatment. Dr. Sherkow signed a report dated July 31, 1958, indicating that Jamerson came to see him on that date, complaining of a "painful back."

Frank Grund, the city dispatcher, testified that Jamerson did not report any back injury to him on July 30 or 31, 1958; that the first mention of a back injury came from Jamerson in April, 1961. Grund testified, however, that he sent Jamerson to see the city's physician and that Jamerson called in sick on July 31, 1958. He stated that he could not remember what was said during their conversation and that he sent Jamerson to the city's physician because he was using too much sick leave.

Dr. Atkinson testified that Jamerson had called him for an appointment on July 30, 1958, but since he did not have office hours that day, he told Jamerson to come to his office the next morning. On the following day, July 31, 1958, Jamerson was examined by Dr. Atkinson, after giving a history of pains in his back which had developed after he

fell while at work on the previous day. Dr. Atkinson testified that although he had treated Jamerson several times between June, 1957, and July 31, 1958, he had not complained about any back trouble on those occasions. The examination made by Dr. Atkinson on July 31st revealed that Jamerson was suffering from acute muscle spasms, for which he prescribed treatment. Jamerson was advised not to go back to work for a few days.

Jamerson reported to Dr. Sherkow at the city hall on August 4th, at which time he was told that he could return to work. Dr. Sherkow filled out a form dated August 4, 1958, stating that Jamerson had been on leave of absence since July 30th due to an acute spastic back, and that although there was still stiffness of the lumbar spine, he could return to work. Jamerson filled out an application for sick-leave pay dated August 5, 1958, indicating that he had been absent from work from July 30 to August 4, 1958, inclusive, due to an acute spastic back. He also stated on the application that he had notified his superior in accordance with department regulations.

Dr. Atkinson testified that he saw Jamerson several times between July, 1958, and July, 1961, and that he always complained of back pains. Dr. Atkinson sent Jamerson to the Capitol Hospital (now the Hoan Hospital) in April, 1961, where he was placed in traction, and his trouble diagnosed as herniation of the vertebral disc with muscle spasms. After consulting with a neurosurgeon, Dr. Atkinson sent Jamerson to St. Anthony's Hospital on August 9, 1961, where he underwent surgery for removal of a herniated disc. Jamerson has been hospitalized several times since the operation, and testified that during 1959 and 1960, he continued treatment of his back at home.

The commission's findings of fact were that Jamerson sustained an accidental injury on July 30, 1958, that he re-

ported the injury to the dispatcher, and that his claim was not barred by the two-year statute of limitations.[1] The order of the commission awarded Jamerson compensation totaling $9,354.59, including medical expenses.

It is fundamental that this court will affirm a finding of fact of the commission unless such finding is clearly against all the credible testimony or so inherently unreasonable as not to be entitled to any weight. *Fitz v. Industrial Comm.* (1960), 10 Wis. (2d) 202, 102 N. W. (2d) 93; *Van Valin v. Industrial Comm.* (1962), 15 Wis. (2d) 362, 112 N. W. (2d) 920; *Shawley v. Industrial Comm.* (1962), 16 Wis. (2d) 535, 114 N. W. (2d) 872. In reviewing a finding of fact by the Industrial Commission, this court's function is to determine whether or not that finding is supported by credible evidence. *Burt Brothers v. Industrial Comm.* (1949), 255 Wis. 488, 39 N. W. (2d) 388; *Borden Co. v. Industrial Comm.* (1958), 2 Wis. (2d) 619, 87 N. W. (2d) 261.

The city's first contention on this appeal is that the commission's finding that Jamerson sustained an accidental

[1] Sec. 102.12, Stats. 1957. "NOTICE OF INJURY, EXCEPTION, LACHES. No claim for compensation shall be maintained unless, within 30 days after the occurrence of the injury or within 30 days after the employe knew or ought to have known the nature of his disability and its relation to his employment, actual notice was received by the employer or by an officer, manager or designated representative of an employer. . . . Absence of notice shall not bar recovery if it is found that the employer was not misled thereby. Regardless of whether notice was received, if no payment of compensation (other than medical treatment or burial expense) is made, and no application is filed with the commission within 2 years from the date of the injury or death, or from the date the employe or his dependent knew or ought to have known the nature of the disability and its relation to the employment, the right to compensation therefor shall be barred, except that the right to compensation shall not be barred if the employer knew or should have known, within the 2-year period, that the employe had sustained the injury on which claim is based."

injury on July 30, 1958, was in reality a conclusion of law and hence subject to review by the court. Sec. 102.18 (1), Stats. 1957, requires the commission to make and file findings upon all the facts involved in the controversy. This section has been construed to require only that the findings of the commission take the form of stating ultimate, rather than evidentiary, facts. *Van Pool v. Industrial Comm.* (1954), 267 Wis. 292, 294, 64 N. W. (2d) 813; *Wisconsin Appleton Co. v. Industrial Comm.* (1955), 269 Wis. 312, 320, 69 N. W. (2d) 433; *Green Bay Warehouse Operators, Inc., v. Industrial Comm.* (1963), 19 Wis. (2d) 11, 14, 119 N. W. (2d) 435.

We determine that the commission's finding that Jamerson's injury was accidental and arose out of his employment is a true finding of fact which is supported by the evidence and therefore conclusive.[2] See *Schuh v. Industrial Comm.* (1958), 2 Wis. (2d) 611, 612, 87 N. W. (2d) 256, and *Mrs. Drenk's Foods v. Industrial Comm.* (1959), 8 Wis. (2d) 192, 196, 99 N. W. (2d) 172.

The city's second contention is that sec. 102.12, Stats. 1957, bars Jamerson's action. That section contains two conditions for the maintenance of a compensation claim: (1) The employer must receive notice of an injury within thirty days after the employee knew or ought to have known the nature of his disability; and (2) regardless of whether notice was received, the action is barred if no application is filed with the commission within two years from the date of injury, or from the date the employee knew or ought to have known the nature of the disability. The statute also provides, however, that absence of notice shall not bar recovery if the employer was not misled thereby, and that the right to compensation shall not be barred if the employer

---

[2] Sec. 102.23, Stats. 1957. "JUDICIAL REVIEW. (1) The findings of fact made by the commission acting within its powers shall, in the absence of fraud, be conclusive; . . ."

knew or should have known within the two-year period that the employee had sustained the injury on which the claim is based.

(1) *Thirty-day notice under the requirements of sec. 102.12, Stats.* The record is barren of any evidence tending to show that the city was in any way misled, and this court has held that where there is absence of notice, the employer is required by sec. 102.12, Stats., to affirmatively show that it has been prejudiced. *A. D. Thomson & Co. v. Industrial Comm.* (1928), 194 Wis. 600, 603, 217 N. W. 327; *Michigan Quartz Silica Co. v. Industrial Comm.* (1934), 214 Wis. 289, 294, 252 N. W. 682. The commission found as a fact that Jamerson reported his injury to the dispatcher on the same day and there is credible evidence to support the finding.

(2) *The two-year limitation pursuant to sec. 102.12, Stats.* Jamerson did not file an application for adjustment of his claim within two years from the date of injury. However, the record discloses Dr. Atkinson's report to the city service commission, dated August 2, 1958, to the effect that Jamerson had been under his care since July 30, 1958, for an acute spastic back, as well as two reports of the city's own physician, Dr. Sherkow, dated July 31 and August 4, 1958, stating that he had seen Jamerson in regard to back trouble on those dates. The record also contains Jamerson's application to the city for sick-leave pay covering the period from July 30 to August 4, 1958, due to an acute spastic back. These facts are sufficient to support the commission's finding that Jamerson's claim was not barred by the two-year limitation contained in sec. 102.12, Stats.

*By the Court.*—Judgment affirmed.